Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2018 12:11 AM CST

JOHN J. BOWER, APPELLANT AND CROSS-APPELLEE,
v. EATON CORPORATION AND OLD REPUBLIC
INSURANCE COMPANY, APPELLEES
AND CROSS-APPELLANTS.

___ N.W.2d ___

Filed October 12, 2018.    No. S-17-1188.

1. **Workers' Compensation: Appeal and Error.** An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.

2. **____: ____.** Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact that are clearly wrong in light of the evidence.

3. **Workers' Compensation.** Whether an injured worker is entitled to vocational rehabilitation is ordinarily a question of fact to be determined by the Workers' Compensation Court.

4. **Workers' Compensation: Appeal and Error.** The percentage of permanent partial loss of use for an injured member is a question of fact that an appellate court reviews for clear error.

5. **Workers' Compensation: Expert Witnesses.** As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.

6. **Workers' Compensation: Rules of Evidence: Due Process.** The Workers' Compensation Court is empowered to admit evidence not normally admissible under the rules of evidence applicable in the trial courts of this state, subject to the limits of constitutional due process.

7. **Workers' Compensation: Evidence.** Given the beneficent purposes of workers' compensation law, the Workers' Compensation Court can admit evidence not normally admissible in order to investigate cases in the manner it judges is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the Nebraska Workers' Compensation Act.

8. **Workers' Compensation: Physicians and Surgeons: Words and Phrases.** Only the supervising physician in a physician-physician assistant relationship falls under the definition of physician as stated in Workers' Comp. Ct. R. of Proc. 49(O) (2018).

9. **Workers' Compensation: Appeal and Error.** Whether an employee's compensable scheduled member injury has resulted in a whole body impairment and loss of earning power is a question of fact, which an appellate court reviews for clear error.

10. **Workers' Compensation.** Employees are not limited to benefits for a scheduled member injury when the effects of that injury have extended to other parts of the employee's body in a manner that impairs the employee's ability to work.

11. ____. The test for determining whether a disability is to a scheduled member or to the body as a whole is the location of the residual impairment, not the situs of the injury.

12. **Workers' Compensation: Proof.** An employee has the burden to prove by a preponderance of the evidence compensability of a claim against an employer under the Nebraska Workers' Compensation Act.

13. **Workers' Compensation.** A workers' compensation award cannot be based on mere possibility or speculation.

14. **Workers' Compensation: Evidence.** An award of future medical expenses requires explicit evidence that future medical treatment is reasonably necessary to relieve the injured worker from the effects of the work-related injury.

15. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

16. **Workers' Compensation.** The Nebraska Workers' Compensation Act is construed liberally to carry out its spirit and beneficent purposes.

17. **Workers' Compensation: Jurisdiction: Statutes.** As a statutorily created court, the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute.

18. **Workers' Compensation: Jurisdiction: Contracts: Parties: Insurance.** The Nebraska Workers' Compensation Act does not afford the compensation court jurisdiction to resolve contractual disputes between employees and third-party insurers.

19. **Workers' Compensation: Jurisdiction: Contracts: Insurance.** A contractual dispute over private agreements for disability coverage that is not workers' compensation coverage is not ancillary to the compensation court's primary jurisdiction.

20. **Workers' Compensation: Jurisdiction: Termination of Employment.** Wrongful discharge in relation to filing a workers' compensation claim

does not fall under the compensation court's exclusive jurisdiction over accidents arising out of and in the course of employment.

21. **Workers' Compensation: Termination of Employment: Torts.** Wrongful discharge is not one of the tort actions for which employers receive relief in exchange for liability under the Nebraska Workers' Compensation Act.

22. **Workers' Compensation: Penalties and Forfeitures.** To avoid the penalty provided for in Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016), an employer need not prevail in the employee's claim, but must have an actual basis in law or fact for disputing the claim and refusing compensation.

23. **Workers' Compensation: Penalties and Forfeitures: Time: Appeal and Error.** An appellate court reviews for clear error the compensation court's findings concerning reasonable controversy underlying its determination of waiting-time penalties.

24. **Workers' Compensation: Proof.** Depending on the circumstances, a reasonable controversy may exist regarding the employer's liability until an employee presents the employer with competent medical evidence that he or she is entitled to workers' compensation benefits.

25. **Attorney Fees.** The determination of the amount of attorney fees is necessarily a question of fact that requires a factual determination on several factors, including the value of legal services rendered by an attorney by considering the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.

Appeal from the Workers' Compensation Court: Thomas E. Stine, Judge. Affirmed.

Vikki S. Stamm and Jerad A. Murphy, of Stamm, Romero & Associates, P.C., L.L.O., for appellant.

Kent M. Smith and Michael J. Lunn, of Scheldrup, Blades, Schrock & Smith, P.C., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

The employee appeals from an award of the Nebraska Workers' Compensation Court. The issues presented concern the employee's member impairment rating, whether an injured extremity caused a whole body impairment, the sufficiency of the evidence to prove out-of-pocket medical expenses and future medical expenses, whether a physician assistant is a "physician" for the purpose of admitting signed written reports in lieu of testimony, whether there was no reasonable controversy as to the compensability of the injury such that greater waiting-time penalties should have been imposed, the compensation court's jurisdiction to decide retaliatory discharge or a private disability insurer's right to reimbursement, the necessity of vocational rehabilitation, and the amount of attorney fees. We affirm.

## BACKGROUND

John J. Bower worked for Eaton Corporation (Eaton) as a relief operator. Bower earned approximately $19 per hour and worked approximately 56 hours per week. On September 30, 2013, Bower injured his right shoulder in an accident arising out of and in the course of his employment.

Bower reported the incident to his supervisor that same day, but continued working until the end of his shift. Bower woke up the following morning with "the sharpest pain I've ever . . . felt before." He saw his general physician, Dr. Chadd Murray. An x ray did not reveal an injury.

When nonsurgical treatments did not alleviate continuing symptoms, Bower was referred to Dr. Heber Crockett, an orthopedic surgeon, for treatment of his injury. Magnetic resonance imaging on November 25, 2013, revealed a moderate partial rotator cuff tear.

Over the course of the next 3 years, the injury was treated with medication, steroid injections, physical therapy, and four surgical procedures. The surgical procedures were performed

on February 4 and May 20, 2014, and March 17 and December 22, 2015. During this time, Eaton did not acknowledge that the injury was work related and did not pay workers' compensation benefits.

Bower filed a workers' compensation claim on February 24, 2015. Bower reached maximum medical improvement on June 6, 2016, during the pendency of the workers' compensation proceedings. He submitted to an independent medical examination on July 7, conducted by Dr. Michael Morrison, an orthopedic surgeon.

Morrison opined that Bower suffered from a permanent 12-percent impairment of his right upper extremity as a result of the September 2013 injury. After receiving Morrison's report, Eaton determined that Bower had incurred a work-related injury on September 30, 2013. Eaton determined that the February and May 2014 and March 2015 surgical procedures were compensable. But Eaton determined that the December 2015 surgery was not compensable.

On August 12, 2016, Eaton paid Bower temporary total disability benefits representing the periods from February 4 until July 17, 2014, and March 17 until August 16, 2015, in a total amount of $33,073.72. Eaton also paid on August 12, 2016, $19,718.91 in permanent partial disability benefits based on Morrison's assessment of a 12-percent permanent impairment of Bower's right upper extremity.

On September 1, 2016, Eaton discharged Bower from his employment, explaining to Bower that Eaton could not accommodate the work restrictions for his injury. Bower had been performing his regular duties without any accommodations, believing that he was adequately compensating with his left arm in order to avoid lifting too much weight with his right. Moreover, Bower believed he was qualified to continue working at Eaton in different positions as the "lead" or supervisor of the line. Nevertheless, representatives of Eaton told him that he was not working within his restrictions and that he

would be discharged unless he could convince a physician to reduce them.

In his petition, Bower had sought temporary total disability benefits, vocational rehabilitation, and payment of medical bills incurred and to be incurred in the future, as well as waiting-time penalties and attorney fees. In a joint pretrial memorandum, the parties presented several issues for determination, including reimbursement for out-of-pocket medical expenses and entitlement to future medical expenses, entitlement to return to work at Eaton or vocational rehabilitation services, the amount of Bower's permanency rating to his right upper extremity and whether he suffered a whole body impairment, Eaton's insurer's entitlement to repayment for short-term disability payments made to Bower in relation to his injury, Bower's entitlement to attorney fees and a waiting-time penalty, and whether Bower was entitled to compensation for allegedly being discharged in retaliation for Eaton's payment of workers' compensation benefits.

The statement of issues for determination in the joint pretrial memorandum did not include reimbursement for vacation time used during treatment of the September 2013 injury. In the court's notice of trial and pretrial order, it had advised the parties that any issue not set forth in the joint pretrial memorandum would be deemed waived.

The court issued its award on October 16, 2017, following a trial.

### Temporary Total
### Disability Awarded

In the court's award, it found that all the surgeries were compensable. Thus, in addition to the amount paid voluntarily by Eaton during the pendency of the proceedings, the court awarded temporary total disability benefits pertaining to the December 2015 surgery. This amounted to a total of $1,877.99, which neither party disputes on appeal.

### PERMANENT DISABILITY BASED ON
### MEMBER IMPAIRMENT RATING
### OF 12 PERCENT

The court awarded permanent disability benefits based on a 12-percent impairment to Bower's right upper extremity. This member impairment rating was derived from Morrison's report.

Bower had submitted a report by Crockett's physician assistant, Yuji Kitabatake. Kitabatake opined in the report that Bower suffered a 15-percent permanent impairment to his right upper extremity. The report was signed "Yuji Kitabatake, PA-C for Heber C. Crockett, M.D." Crockett did not sign the document. Eaton objected to the report as hearsay and outside the scope of Workers' Comp. Ct. R. of Proc. 10 (2018). The court received the report into evidence, but stated it would give the report whatever weight it found was due after reviewing it.

In its award, the court concluded that the report was not due any weight. Citing to Neb. Rev. Stat. § 48-151(1) (Reissue 2010) and Workers' Compensation Court rule 10, the court found that the report failed to qualify as an expert medical opinion upon which it could rely for a determination of workers' compensation benefits.

### NO WHOLE BODY IMPAIRMENT

The court declined Bower's suggestion that his permanent disability benefits should be calculated based upon a loss of earning capacity under an impairment to the body as a whole. The only evidence of an impairment to the body as a whole was Kitabatake's report which stated, "Conversion from upper extremity to whole person is from 15% to 9% of whole person . . . ." Kitabatake did not otherwise describe how the shoulder injury caused a whole body impairment.

In refusing to calculate the permanent partial disability award based on impairment to the body as a whole, the court reasoned that the medical evidence showed Bower's residual

limitation and impairment were to his right upper extremity, and the court was "not persuaded that [Bower's] impairment to his right upper extremity has in some manner manifested itself as a . . . whole [body] impairment."

## PARTIAL WAITING-TIME
## PENALTY AWARDED

The court awarded Bower a waiting-time penalty pursuant to Neb. Rev. Stat. § 48-125(3) (Cum. Supp. 2016), but only in relation to Eaton's failure to timely pay workers' compensation benefits for the December 2015 surgery and corresponding recovery period. The waiting-time penalty for such benefits was $939. The court found that there was no longer a reasonable controversy as to the compensability of Bower's injury and the resulting medical care, including the December 2015 surgery and recovery period, as of the date of Eaton's receipt of Morrison's report.

The court declined to award additional waiting-time penalties in relation to the remaining benefits that were paid by Eaton voluntarily on August 12, 2016, because it concluded that a reasonable controversy existed as to the compensability of Bower's injury until Eaton received Morrison's report. The court explained that the reasonable controversy stemmed from Murray's original progress note. The note described that Bower was seen on October 1, 2013, complaining of shoulder pain. And, in the "History of Present Illness" section, under the title, "Recent Interventions," Murry wrote, "He has no injury to his shoulder just woke up with the pain."

When an agent of Eaton advised Bower that Murray had failed to indicate the injury was work related, Murray revised the progress note. The revision was apparently faxed to Eaton on November 22, 2013. It added that Bower "had injured his shoulder at work when he was lifting a heavy item, he has had pain but it became much worse this morning." However, the amended note continued to include the contradictory language from the original progress note.

Exhibit 48 reflects that Eaton's workers' compensation insurer sent a letter to Murray on December 10, 2013, requesting that Murray explain the discrepancies between the initial report and the revised report and why it was changed. The letter stated that Eaton's workers' compensation insurer had attempted to speak with Murray on several occasions to discuss the discrepancy. There was no evidence that Murray responded to Eaton's inquiries.

### NO OUT-OF-POCKET MEDICAL EXPENSES AWARDED

The court denied Bower's claim for unpaid out-of-pocket medical expenses. In its pretrial order, the court had ordered the parties to file a joint pretrial memorandum, including, among other things, a "medical expense cover sheet setting forth an itemization of each medical expense incurred and unpaid, or for which reimbursement is claimed, by provider, date, and amount."

The parties jointly submitted a medical expense cover sheet that specified providers and amounts, but not dates. It showed a total paid by Bower in the amount of $3,975.41 and a total paid by Bower's insurer in the amount of $38,735.88. The cover sheet showed a total amount of medical expenses, by provider, of $104,356.87.

At trial, Bower entered into evidence voluminous medical billing statements and records. The medical billing statements are contained in exhibits 23 through 32, and the medical records are found in exhibits 16 through 20. The billing statements show numerous payments made by health care insurance and by patient, but several statements contain overlapping dates, and thus duplicative payment receipts.

The court additionally accepted into evidence exhibits 14 and 15, which contain Bower's summarization of his out-of-pocket expenses. Most, but not all, of the items summarized are detailed by date and provider. Exhibits 14 and 15 claimed a total of $12,315.94 in out-of-pocket expenses. Bower testified

that he was never reimbursed for any out-of-pocket expenses he paid during the treatment of his injury.

After trial, the court contacted counsel and requested additional information to clarify the medical expenses. Counsel were to submit the information by stipulation on October 6, 2017. Counsel did not provide the information as requested. Approximately 2 weeks later, the court again contacted counsel on October 10, requesting additional information. Counsel indicated they would have the information to the court by October 12; but counsel did not provide any additional information.

In denying compensation for any out-of-pocket medical expenses, the court explained, "The medical expense information provided by the parties falls woefully short of what was ordered to be provided by the Pretrial Order, and the Court is unable to meaningfully analyze the information." Specifically, the court noted that the cover sheet reflected medical expenses still owed in an amount of $61,645.58, which amount the court observed was not reflected in the exhibits entered into evidence. Furthermore, the court noted the discrepancy between the claimed amount of out-of-pocket medical expenses in exhibits 14 and 15 of $12,315.94 and the amount of $3,975.41 stated as being paid by Bower in the medical expenses cover sheet of the joint pretrial memorandum.

The court concluded that Bower had "failed to satisfy his burden to prove that the medical expenses submitted in Exhibits 14, 15, and 23 through 32, are fair, reasonable, and related to the work injury." With this reasoning, the court awarded Bower no out-of-pocket medical expenses.

## Attorney Fees Awarded

Because the court had determined that Eaton failed to timely pay benefits relating to the December 2015 surgery, the court awarded attorney fees under § 48-125(2)(a), in the amount of $7,500. The court explained that it had reached the amount of attorney fees to be awarded based upon the general nature of the case, the time spent in preparing and trying the case, the

novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.

## NO FUTURE MEDICAL EXPENSES AWARDED

The court did not award future medical expenses. The court found that Bower had failed to establish by explicit medical testimony that future medical care would be reasonably necessary.

Bower had testified at trial that Crockett told him he might need additional cortisone injections if his pain increased; Crockett did not testify. The only other evidence submitted by Bower as to future medical treatment was Kitabatake's report, in which Kitabatake opined that "it is a reasonable degree of medical certainty that [Bower] may need injections and physical therapy in the future."

In contrast, Morrison opined in his report that "no other treatment is necessary other than a home program of passive stretching and shoulder girdle strengthening that could be carried out on a self-motivated program."

In denying an award of future medical expenses, the court reiterated that Kitabatake's opinions lacked foundation and were accordingly insufficient to support an award of benefits. Additionally, the court reasoned that Kitabatake's statement that Bower "may" need additional care lacked sufficient certainty to be considered explicit medical evidence of the necessity of future medical care.

## VOCATIONAL REHABILITATION SERVICES AWARDED

The court concluded that Bower was entitled to vocational rehabilitation services and temporary total disability benefits during the time that Bower participates in an approved vocational rehabilitation plan.

The court had appointed a vocational rehabilitation counselor. The stipulation of facts in the joint pretrial memorandum stated, "[Bower] has been referred to a vocational rehabilitation expert through the Worker[s'] Compensation Court system."

The counselor submitted four reports between February and August 2017. The reports indicate that the counselor had attempted to find suitable employment for Bower with Eaton, but was unsuccessful. The counselor's labor market research indicated that if Bower returned to the labor market with his current qualifications, he could expect to obtain employment earning approximately 60 percent of the hourly wage he earned at Eaton, or approximately $12 per hour.

With the approval of the court, the counselor subsequently conducted a vocational evaluation. Based on the evaluation, the counselor recommended moving forward with developing a vocational rehabilitation plan.

The court found that Bower had met his burden to show he is entitled to vocational rehabilitation services. Referring to the stipulation of facts in the joint pretrial memorandum, the court reasoned, first, that "[t]he parties stipulated that [Bower] is entitled to vocational rehabilitation services and a counselor has been appointed by the Court to perform these services." Second, the court noted that there was medical evidence in the record that Bower was unable to return to work at Eaton after the December 2015 surgery, because Eaton was unable to accommodate the permanent work restrictions set forth by the functional capacity examination.

## No Jurisdiction Over Short- and Long-Term Disability Payments

The court declined the parties' invitation to address whether Bower was liable to Eaton's private insurer for disability payments made in relation to Bower's injury. Bower had submitted into evidence demands by Eaton's insurance provider that Bower repay approximately $16,000 in short-term disability payments made by the insurer while Eaton refused

workers' compensation benefits. The short-term disability insurance plan, signed by Bower, provided that Bower would reimburse the insurer to the extent that benefits paid should be offset by reason of benefits received under any workers' compensation law. The court explained that this issue involved contract questions outside the jurisdictional scope of the Nebraska Workers' Compensation Act and the Workers' Compensation Court.

### NO JURISDICTION OVER WRONGFUL TERMINATION

Likewise, the court determined that it lacked jurisdiction to consider Bower's wrongful discharge allegations. Bower testified that he did not think Eaton had grounds to discharge him, because he believed he could perform his duties within the medical restrictions he had been given. The court concluded that any claim for retaliatory discharge is outside the framework of the Nebraska Workers' Compensation Act. Thus, Bower's potential remedy for the alleged retaliatory discharge must be brought in a different forum.

### REIMBURSEMENT FOR VACATION TIME

The court's award did not address any claim for compensation of vacation time used during periods Bower could not work because of the September 2013 injury. This was presumably because Bower did not include this issue in the pretrial statement of issues for determination.

### ASSIGNMENTS OF ERROR

Bower assigns that the Workers' Compensation Court erred by failing to (1) award permanent disability based on a loss of earning capacity rather than a member impairment rating, (2) award permanent disability based on a 12-percent member impairment rating rather than a 15-percent member impairment rating, (3) award a waiting-time penalty from the date of the injury rather than the date of payment of benefits in August 2016, (4) award Bower out-of-pocket medical expenses

pursuant to the exhibits offered at trial, (5) award future medical expenses for cortisone injections, (6) award reimbursement of vacation time and short-term disability, (7) decide the issue of Eaton's right to reimbursement of disability payments made by its insurer, and (8) decide Bower's wrongful termination claim.

On cross-appeal, Eaton and its workers' compensation insurance carrier, Old Republic Insurance Company (Old Republic), assign that the court erred in awarding Bower (1) vocational rehabilitation services and (2) $7,500 in attorney fees.

## STANDARD OF REVIEW

Under Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), the judgment made by the compensation court shall have the same force and effect as a jury verdict in a civil case and may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

[1] An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.[1]

[2] Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact that are clearly wrong in light of the evidence.[2]

[3] Whether an injured worker is entitled to vocational rehabilitation is ordinarily a question of fact to be determined by the Workers' Compensation Court.[3]

---

[1] See *Dragon v. Cheesecake Factory*, 300 Neb. 548, 915 N.W.2d 418 (2018).

[2] *Id.*

[3] *Anderson v. EMCOR Group*, 298 Neb. 174, 903 N.W.2d 29 (2017).

## ANALYSIS

Bower claims on appeal that the court's award of a 12-percent impairment was insufficient and that, in any event, he should have been awarded permanent partial disability based on an injury to his body as a whole. Bower argues, further, that the court clearly erred in failing to award him any out-of-pocket medical expenses and that it should have awarded a waiting-time penalty for all the compensation and medical payments unpaid within 30 days of Murray's revised progress note. Finally, Bower asserts that the court should have addressed the merits of his retaliatory discharge claim, the employer's private disability insurer's right to reimbursement for temporary disability payments, and Bower's right to reimbursement of vacation time used as a result of his injury. On cross-appeal, Eaton and Old Republic contest the necessity of vocational rehabilitation and the amount of attorney fees awarded. We address each of these arguments in turn.

### MEMBER IMPAIRMENT RATING

[4] We first address Bower's contention that the court should have given his scheduled member impairment a rating of 15 percent rather than 12 percent. The percentage of permanent partial loss of use for an injured member is a question of fact that we review for clear error.[4]

[5] Impairment to a scheduled member is measured on the basis of loss of physical function.[5] An impairment rating is simply a medical assessment of what physical abilities have been adversely affected or lost by an injury.[6] The extent of loss

---

[4] See, *Ideen v. American Signature Graphics*, 257 Neb. 82, 595 N.W.2d 233 (1999); *Schmid v. Nebraska Intergov. Risk Mgt. Assn.*, 239 Neb. 412, 476 N.W.2d 243 (1991); *Knuffke v. Bartholomew*, 106 Neb. 763, 184 N.W. 889 (1921).

[5] See, Neb. Rev. Stat. § 48-121 (Reissue 2010); *Yager v. Bellco Midwest,* 236 Neb. 888, 464 N.W.2d 335 (1991).

[6] *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003).

of use does not necessarily equal the extent of medical impairment, and testimony need not establish a specific percentage impairment rating to be legally sufficient.[7] Furthermore, the trial judge is not limited to expert testimony to determine the degree of disability, but instead may rely on the testimony of the claimant.[8] Nonetheless, the medical impairment rating given by a doctor may be an important factor.[9] And, as the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.[10]

Kitabatake's report was the only express medical opinion that Bower suffered from a 15-percent impairment to his right upper extremity. Bower asserts that the court erred as a matter of law in deciding not to give Kitabatake's report weight on the ground that it failed to comply with Workers' Compensation Court rule 10. We find no merit to this argument.

[6,7] The compensation court does not have the right to establish rules of evidence, procedure, or discovery that are more restrictive or onerous than the rules applicable to the trial courts in this state.[11] But it is empowered to admit evidence not normally admissible under the rules of evidence applicable in the trial courts of this state, subject to the limits of constitutional due process.[12] This is because the Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence.[13] Given the beneficent purposes of workers' compensation law, the court can admit such

---

[7] See *id.*

[8] See *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016).

[9] See *Swanson v. Park Place Automotive, supra* note 6.

[10] *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996).

[11] *Cunningham v. Leisure Inn*, 253 Neb. 741, 573 N.W.2d 412 (1998).

[12] See, *Olivotto v. DeMarco Bros. Co.*, 273 Neb. 672, 732 N.W.2d 354 (2007); *Cunningham v. Leisure Inn, supra* note 11.

[13] *Cunningham v. Leisure Inn, supra* note 11.

evidence in order to investigate cases in the manner it judges is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the Nebraska Workers' Compensation Act.[14]

Rule 10 is an evidentiary rule that we have held is not more restrictive than the rules applied to trial courts in this state.[15] Rather, rule 10 allows the compensation court to admit into evidence medical reports that would not normally be admissible in the trial courts of this state.[16] Rule 10 states in relevant part:

> **A. Medical and Vocational Rehabilitation.** . . . [W]ith respect to medical evidence on hearings before a judge of [the Workers' Compensation C]ourt, written reports by a physician or surgeon duly signed by him, her or them and itemized bills may, at the discretion of the court, be received in evidence in lieu of or in addition to the personal testimony of such physician or surgeon; with respect to evidence produced by vocational rehabilitation experts, physical therapists, and psychologists on hearings before a judge of said court, written reports by a vocational rehabilitation expert, physical therapist, or psychologist duly signed by him, her or them and itemized bills may, at the discretion of the court, be received in evidence in lieu of or in addition to the personal testimony of such vocational rehabilitation expert, physical therapist, or psychologist.

The only requirements for a medical report to be admissible under rule 10 are that the report be a medical report and be signed by the physician, surgeon, vocational rehabilitation expert, physical therapist, or psychologist.[17] Physician assistants are not listed in rule 10.

---

[14] *Olivotto v. DeMarco Bros. Co., supra* note 12.

[15] See *Johnson v. Ford New Holland*, 254 Neb. 182, 575 N.W.2d 392 (1998).

[16] *Id.*

[17] See *Baucom v. Drivers Management*, 12 Neb. App. 790, 686 N.W.2d 98 (2004).

The court concluded that Kitabatake's signature did not satisfy the requirements of rule 10, because Kitabatake is not a "physician." We agree.

"Physician" is defined by Workers' Comp. Ct. R. of Proc. 49(O) (2018) as "any person licensed to practice medicine and surgery, osteopathic medicine, chiropractic, podiatry, or dentistry in the State of Nebraska or in the state in which the physician is practicing." Other statutes make clear that it is the supervising physician, not the physician assistant, who has the license to practice medicine. The Medicine and Surgery Practice Act,[18] under § 38-2047, specifies that physician assistants are considered agents of a supervising physician to perform activities delegated by the supervising physician. Under § 38-2050(1)(a), to be a supervising physician of a physician assistant, a person must "[b]e licensed to practice medicine and surgery under the Uniform Credentialing Act." Finally, in the context of the Interstate Medical Licensure Compact,[19] the Legislature has defined the practice of medicine as clinical prevention, diagnosis, or treatment of human disease, injury, or condition requiring a "physician" to obtain and maintain a license in compliance with the Medicine and Surgery Practice Act.

[8] As such, only the supervising physician in a physician-physician assistant relationship falls under the definition of physician as stated in Workers' Compensation Court rule 49(O). Kitabatake's report, signed only by Kitabatake, was not signed by a physician as required by rule 10.

We have upheld the compensation court's decision to exclude evidence that fails to strictly comply with rule 10. In *Johnson v. Ford New Holland*,[20] for example, we held that the court

---

[18] See Neb. Rev. Stat. § 38-2001 et seq. (Reissue 2016 & Supp. 2017) and 2018 Neb. Laws, L.B. 701, §§ 5 and 6, and L.B. 1034, §§ 30 and 31 (effective July 19, 2018).

[19] See Neb. Rev. Stat. § 38-3603(j) (Supp. 2017).

[20] See *Johnson v. Ford New Holland, supra* note 15.

did not abuse its discretion in refusing to admit into evidence a physician's written report that failed to comply with rule 10 because it lacked a signature.

Similarly here, the court did not abuse its discretion in refusing to admit into evidence a report that was not signed by a physician, as is required by the relevant provisions of rule 10. The court's conclusion that Bower suffered from a 12-percent impairment to his right upper extremity was supported by Morrison's report and was not the result of erroneously failing to consider the written report signed only by Kitabatake, a physician assistant. The court did not clearly err in finding a permanent partial loss of 12 percent.

## WHOLE BODY IMPAIRMENT

[9] We find no merit to Bower's alternative argument that he should have been awarded permanent total disability benefits for an injury to his body as a whole, rather than permanent partial disability benefits for his injury to his right upper extremity. Whether an employee's compensable scheduled member injury has resulted in a whole body impairment and loss of earning power is a question of fact, which we review for clear error.[21]

[10] Under Nebraska's workers' compensation statutes, an injury to the upper extremity constitutes a scheduled member injury.[22] Permanent total disability benefits are not generally available for a single scheduled member injury.[23] However, employees are not limited to benefits for a scheduled member injury when the effects of that injury have extended to other parts of the employee's body in a manner that impairs the employee's ability to work.[24] When a member injury

---

[21] See *Moyera v. Quality Pork Internat.*, 284 Neb. 963, 825 N.W.2d 409 (2013).

[22] See *Ideen v. American Signature Graphics, supra* note 4.

[23] *Stacy v. Great Lakes Agri Mktg.*, 276 Neb. 236, 753 N.W.2d 785 (2008).

[24] *Moyera v. Quality Pork Internat., supra* note 21.

results in a whole body impairment, the court should enter an award for loss of earning capacity rather than for the member injury.[25]

[11] The test for determining whether a disability is to a scheduled member or to the body as a whole is the location of the residual impairment, not the situs of the injury.[26] If, by the point of maximum medical improvement, an employee has developed a whole body impairment in addition to a scheduled member injury, the question is whether the work-related injury proximately caused the whole body impairment.[27] For instance, we have held that the compensation court did not err in finding that a foot injury proximately caused a whole body impairment, upon evidence that the resulting change in an employee's gait caused chronic pain in the employee's hips and lower back.[28]

But there was no evidence in this case that Bower's shoulder injury extended to other parts of his body. The only medical opinion that Bower suffered a whole body impairment was found in Kitabatake's report, which, as discussed, the court refused to give weight. Even in Kitabatake's report, however, there is no evidence that Bower suffered impairment to other parts of his body. Kitabatake simply reasoned that "[c]onversion from upper extremity to whole person is from 15% to 9% of whole person . . . ." Bower's testimony and the exhibits admitted at trial likewise failed to demonstrate that Bower suffered residual impairment in other parts of his body.

The court did not clearly err in concluding that Bower did not have a whole body impairment as a result of the September 2013 injury.

---

[25] See *Bishop v. Speciality Fabricating Co.*, 277 Neb. 171, 760 N.W.2d 352 (2009).

[26] *Moyera v. Quality Pork Internat., supra* note 21.

[27] *Id.*

[28] See *id.*

OUT-OF-POCKET MEDICAL EXPENSES

Neither did the court clearly err in concluding that Bower failed to satisfy his burden of proof to support an award of out-of-pocket medical expenses. This determination involved findings of fact, which will not be disturbed on appeal unless they are clearly wrong in light of the evidence.[29]

Neb. Rev. Stat. § 48-120(1)(a) (Cum. Supp. 2016) provides that the employer is liable for, among other things, all reasonable medical, surgical, and hospital services, and medicines, which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment. Section 48-120(8) states in relevant part that the compensation court shall order "reimbursement to anyone who has made any payment to the supplier for services provided in this section." It states in full:

> The compensation court shall order the employer to make payment directly to the supplier of any services provided for in this section or reimbursement to anyone who has made any payment to the supplier for services provided in this section. No such supplier or payor may be made or become a party to any action before the compensation court.[30]

[12] An employee has the burden to prove by a preponderance of the evidence compensability of a claim against an employer under the Nebraska Workers' Compensation Act.[31] Where the evidence shows that certain medical and hospital expenses have been incurred by an injured employee, a prima facie case is made out.[32]

---

[29] *Id.*

[30] § 48-120(8).

[31] See, *Brandt v. Leon Plastics, Inc.*, 240 Neb. 517, 483 N.W.2d 523 (1992); *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 451 N.W.2d 910 (1990).

[32] *Schoenrock v. School Dist. of Nebraska City*, 179 Neb. 621, 139 N.W.2d 547 (1966).

Bower presented exhibits 14 and 15, which are a detailed summary of $12,315,94 in out-of-pocket medical expenses. But, as the court pointed out, that amount is contradicted by the joint medical expense cover sheet claiming only $3,975.41 in out-of-pocket medical expenses. And it is difficult to surmise what the medical bills established in out-of-pocket medical expenses.

[13] The court twice sought clarification. The record does not reflect that the parties jointly or Bower individually attempted to provide such clarification. An award cannot be based on mere possibility or speculation.[33] The court did not clearly err in concluding that, based on the self-contradictory evidence presented by Bower and the confusing state of the medical bills presented, it would be mere speculation to determine a sum certain for out-of-pocket medical expenses.

### FUTURE MEDICAL EXPENSES

[14] We find no error in the court's refusal to award future medical expenses. Before an order for future medical benefits may be entered, there should be a stipulation of the parties or evidence in the record to support a determination that future medical treatment will be reasonably necessary to relieve the injured worker from the effects of the work-related injury or occupational disease.[34] An award of future medical expenses requires explicit evidence that future medical treatment is reasonably necessary to relieve the injured worker from the effects of the work-related injury.[35]

Morrison opined that no other treatment would be necessary for the September 2013 injury other than a "self-motivated program" of stretching and strengthening. The only evidence to the contrary is found in Kitabatake's report. But, as discussed,

---

[33] See *Maroulakos v. Walmart Associates*, 300 Neb. 589, 915 N.W.2d 432 (2018).

[34] *Tchikobava v. Albatross Express, supra* note 8.

[35] *Id.*

the court did not err in discounting the opinion expressed therein. Thus, the court did not err in failing to award future medical expenses.

## Reimbursement for Vacation, Sick, Personal, and Holiday Time

We turn next to Bower's claims regarding reimbursement for vacation, sick, personal, and holiday time used when he was unable to work as a result of the 2013 injury. In its award, the court did not expressly address whether Bower had a right to reimbursement for any vacation, sick, personal, and holiday time. But the court had clearly advised the parties in its pretrial order that any issue not set forth in the joint pretrial memorandum would be waived. Bower did not set forth in the joint pretrial memorandum the issue of compensation for vacation, sick, personal, and holiday time. Indeed, this issue was only briefly mentioned in opening statements.

[15] An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.[36] Furthermore, we have on numerous occasions affirmed the limiting of the issues at trial to those specified in the pretrial order.[37] We will not reverse the court's award for failing to address an issue that Bower failed to present in the pretrial memorandum after the court had advised the parties that the issues at trial would be limited to those specified by the parties in the joint pretrial memorandum. We find no merit to this assignment of error.

## Vocational Rehabilitation Services

Eaton and Old Republic argue on cross-appeal that there was insufficient competent evidence to warrant the court's award of vocational rehabilitation services. Further, Eaton disputes the court's conclusion that Eaton had stipulated that

---

[36] *Turney v. Werner Enters.*, 260 Neb. 440, 618 N.W.2d 437 (2000).

[37] *Cockrell v. Garton*, 244 Neb. 359, 507 N.W.2d 38 (1993).

Bower was entitled to vocational rehabilitation services. We agree that the record fails to demonstrate a stipulation that Bower was entitled to vocational rehabilitation. However, we find that the court did not clearly err in concluding upon the evidence presented that Bower was entitled to vocational rehabilitation.

[16] Whether an injured worker is entitled to vocational rehabilitation is ordinarily a question of fact to be determined by the compensation court.[38] To determine whether findings of fact made by the compensation court support an order granting or denying vocational rehabilitation benefits, an appellate court must consider the findings of fact in light of the statute authorizing vocational rehabilitation benefits, Neb. Rev. Stat. § 48-162.01 (Reissue 2010). Furthermore, in considering the compensation court's factual findings, we are mindful that the Nebraska Workers' Compensation Act is construed liberally to carry out its spirit and beneficent purposes.[39]

Section 48-162.01(1) describes that "[o]ne of the primary purposes of the Nebraska Workers' Compensation Act is restoration of the injured employee to gainful employment" and that "[t]o this end the Nebraska Workers' Compensation Court may employ one or more specialists in vocational rehabilitation." Under § 48-162.01(3):

> When as a result of the injury an employee is unable to perform suitable work for which he or she has previous training or experience, he or she is entitled to such vocational rehabilitation services, including job placement and training, as may be reasonably necessary to restore him or her to suitable employment.

"'[S]uitable employment'" is "'employment which is compatible with the employee's pre-injury occupation, age, education, and aptitude.'"[40] We have affirmed vocational

---

[38] *Anderson v. EMCOR Group, supra* note 3.

[39] *Id.*

[40] *Id.* at 182, 903 N.W.2d at 34.

rehabilitation services aimed at placing the employee into employment paying wages similar to those earned before the work-related injury[41] because the statutory goal of suitable employment includes a similar earning capacity.[42]

The vocational counselor's reports show that after much investigation, the counselor determined Bower could not return to his previous job with Eaton, return to his previous job with Eaton with modification, or return to employment at Eaton with a new job.[43] Bower had indicated that he preferred to continue working at Eaton, where he earned a wage and benefits commensurate with his 20 years of employment at the company. But while Bower believed that he could compensate for his injury and perform his past job within his medical restrictions, Eaton was clear that it would not employ Bower given the medical restrictions of his permanent partial disability.

The counselor's labor market research demonstrated that with Bower's current qualifications, Bower would not be able to obtain employment earning wages commensurate with his past wages at Eaton. Thus, the counselor recommended vocational rehabilitation so that Bower could obtain suitable employment.

Eaton and Old Republic argue on cross-appeal that vocational rehabilitation was not necessary in order for Bower to obtain suitable employment, because Bower testified that he believed himself to be physically capable of doing the same or similar jobs at Eaton or with another manufacturer. Eaton ignores the part of Bower's testimony where he explains that a job with another manufacturer would not pay as well as a

---

[41] See, *Anderson v. EMCOR Group, supra* note 3; *Becerra v. United Parcel Service*, 284 Neb. 414, 822 N.W.2d 327 (2012); *Yager v. Bellco Midwest, supra* note 5.

[42] See, *Becerra v. United Parcel Service, supra* note 41; *Yager v. Bellco Midwest, supra* note 5.

[43] See § 48-162.01(3).

job with Eaton. Eaton also ignores the fact that it refused to continue to employ Bower. The court did not clearly err in finding that vocational rehabilitation was reasonably necessary to restore Bower to suitable employment.

## PRIVATE DISABILITY PAYMENTS AND WRONGFUL DISCHARGE

[17] We find as a matter of law that the compensation court did not err in concluding that it lacked jurisdiction to determine the merits of Bower's claims for damages for wrongful discharge and for a declaration as to his liability to reimburse Eaton's insurer for private disability payments. As a statutorily created court, the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute.[44] Under Neb. Rev. Stat. § 48-152 (Reissue 2010), the Nebraska Workers' Compensation Court has only the "authority to administer and enforce all of the provisions of the Nebraska Workers' Compensation Act, and any amendments thereof, except such as are committed to the courts of appellate jurisdiction."

[18] We have held that the Nebraska Workers' Compensation Act does not afford the compensation court jurisdiction to resolve contractual disputes between employees and third-party insurers.[45] Neb. Rev. Stat. §§ 48-130 and 48-147 (Reissue 2010) prohibit the compensation court from taking into consideration when determining workers' compensation any benefits independent of the act paid to the employee.

Still, Bower asserts that his alleged contractual obligation to reimburse Eaton's insurer for payments under a private disability policy is "ancillary" to resolution of his workers'

---

[44] *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013).

[45] *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved in part, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005). See, also, *Nerison v. National Fire Ins. Co. of Hartford*, 17 Neb. App. 161, 757 N.W.2d 21 (2008).

compensation claim and within the compensation court's jurisdiction pursuant to Neb. Rev. Stat. § 48-161 (Reissue 2010).[46] Section 48-161 provides that the compensation court shall have jurisdiction to decide issues that are "ancillary" to resolution of the workers' compensation claim.

We have held that § 48-161 grants the compensation court jurisdiction to resolve contractual disputes concerning coverage by providers of workers' compensation insurance.[47] We have never held, however, that § 48-161 confers upon the compensation court jurisdiction to resolve contractual disputes for coverage that is not workers' compensation coverage. Bower seems to acknowledge that questions of contractual obligations under private disability insurance contracts would not usually be considered ancillary to the compensation court's primary jurisdiction. But he asserts the fact that "the disability provider and Eaton are one in the same"[48] is an unusual circumstance that makes a difference.

Bower fails to explain why this would make a difference. With the exception of reimbursement of health care insurance providers as specifically described in § 48-120(8), providers of insurance coverage other than workers' compensation coverage are third-party insurers outside the scope of the Nebraska Workers' Compensation Act. This is true regardless of whether the private insurance coverage was provided through the employer as a benefit of employment.

[19] A contractual dispute over private agreements for disability coverage that is not workers' compensation coverage is not ancillary to the compensation court's primary jurisdiction. As stated by §§ 48-130 and 48-147, nothing in the Nebraska Workers' Compensation Act shall affect any existing insurance

---

[46] Brief for appellant at 38.

[47] See, also, *Kruid v. Farm Bureau Mut. Ins. Co.*, 17 Neb. App. 687, 770 N.W.2d 652 (2009).

[48] Brief for appellant at 32.

contract for benefits in addition to the compensation provided for by the act, and no insurance of the injured employee independent of the act shall be taken into consideration by the compensation court. Bower's contractual obligations toward Eaton's private disability insurer had no bearing on the court's determinations of the compensability of Bower's injury, the amount of the award, or Bower's ability to receive the award. The court did not err in refusing to address Bower's obligation to reimburse Eaton's private disability insurer under the offset provisions of the private insurance contract.

[20] Likewise, the court did not err in refusing to consider Bower's claim for wrongful discharge. We have recognized that an employee can state a claim in district court for wrongful discharge in retaliation for filing a claim under the Nebraska Workers' Compensation Act.[49] We have never said that the compensation court has jurisdiction over such a claim. To the contrary, by recognizing such a claim in district court, we have implicitly held that wrongful discharge in relation to filing a workers' compensation claim does not fall under the compensation court's exclusive jurisdiction over accidents arising out of and in the course of employment.[50]

[21] The Nebraska Workers' Compensation Act does not describe wrongful discharge, and as a statutorily created court, it is the role of the Legislature to determine what acts fall within the Workers' Compensation Court's exclusive jurisdiction.[51] Wrongful discharge is not one of the tort actions for which employers receive relief in exchange for liability under the act. The court was correct in concluding that it lacked jurisdiction over Bower's wrongful discharge claim.

---

[49] *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 657 N.W.2d 634 (2003).

[50] See *Estate of Teague v. Crossroads Co-op Assn.*, 286 Neb. 1, 834 N.W.2d 236 (2013).

[51] See *id.*

Waiting-Time Penalty

We turn next to the penalties imposed by the court against Eaton for its failure to timely pay all amounts of compensation due to Bower. Eaton does not contest that it was liable for the $939 imposed for its failure to timely pay benefits relating to the December 2015 surgery. But Bower argues that the waiting-time penalty should have been more, because no reasonable controversy existed as to the compensability of his injury by November 8, 2013, the date of his initial medical visit to Crockett.

Section 48-125(1)(a) states that all amounts of "compensation" payable under the Nebraska Workers' Compensation Act "shall be payable periodically in accordance with the methods of payment of wages of the employee at the time of the injury or death." "Compensation" in reference to additional sums for waiting time, an attorney fee, and interest, means periodic disability or indemnity benefits payable on account of the employee's work-related injury or death.[52] Section 48-125(1)(b) provides for a 50-percent waiting-time penalty in the event such periodic payments are not timely made.

[22] Although "reasonable controversy" appears nowhere in the text of § 48-125, the phrase has been part of our waiting-time penalty jurisprudence for more than 90 years, and we have presumed that the Legislature acquiesced in such determination of the Legislature's intent because it has never amended the Nebraska Workers' Compensation Act to address reasonable controversy.[53] Thus, under § 48-125(1)(b), an employer must pay a 50-percent waiting-time penalty if (1) the employer fails to pay compensation within 30 days of the employee's notice of disability and (2) no reasonable controversy existed regarding the employee's claim for benefits.[54]

---

[52] *Bituminous Casualty Corp. v. Deyle, supra* note 31.

[53] *Armstrong v. State*, 290 Neb. 205, 859 N.W.2d 541 (2015).

[54] *Id.*

To avoid the penalty provided for in § 48-125, an employer need not prevail in the employee's claim, but must have an actual basis in law or fact for disputing the claim and refusing compensation.[55]

[23] Whether a reasonable controversy exists is a question of fact.[56] Accordingly, we review for clear error the compensation court's findings concerning reasonable controversy underlying its determination of waiting-time penalties.[57]

[24] Depending on the circumstances, a reasonable controversy may exist regarding the employer's liability until an employee presents the employer with competent medical evidence that he or she is entitled to workers' compensation benefits.[58] Although the total amount of compensation due may be in dispute, the employer's insurer nevertheless has a duty to promptly pay that amount which is undisputed, and the only legitimate excuse for delay of payment is the existence of genuine doubt from a medical or legal standpoint that any liability exists.[59]

The court found that a reasonable controversy existed at the time of the injury and up until Morrison's report, because internally inconsistent and self-contradictory medical reports by Murray created genuine doubt from a medical standpoint whether Bower had an injury that was incurred at work. Murray's first report on October 1, 2013, stated that Bower had

---

[55] *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987).

[56] *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998).

[57] See *Dragon v. Cheesecake Factory, supra* note 1.

[58] See *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999). Compare *Heesch v. Swimtastic Swim School*, 20 Neb. App. 260, 823 N.W.2d 211 (2012).

[59] See, *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. 901, 448 N.W.2d 591 (1989); *Kubik v. Union Ins. Co.*, 4 Neb. App. 831, 550 N.W.2d 691 (1996); 13 Arthur Larson et al., Larson's Workers' Compensation Law § 135.03 (2017).

"no injury to his shoulder just woke up with pain." Murray's revised report faxed to Eaton on November 22 did not eliminate that statement. Instead, Murray added that Bower "injured his shoulder at work when he was lifting a heavy item, he has had pain but it became much worse this morning." The evidence indicates that Eaton tried to speak with Murray on multiple occasions in order to obtain clarification as to why Murray had changed the medical record and why it was inconsistent. There is no evidence that Murray responded to these inquiries.

In reviewing workers' compensation cases, this court is not free to weigh the facts anew; rather, it accords to the findings of the compensation court the same force and effect as a jury verdict in a civil case.[60] Applying these principles, we find that the court did not clearly err in finding there was a reasonable controversy as to the compensability of Bower's injury until the report of Eaton's independent medical examiner.

### Attorney Fees

Lastly, we address attorney fees. Eaton does not contest that some assessment of attorney fees was appropriate as part of the penalty for its late payment of compensation relating to the December 2015 surgery. Rather, in their cross-appeal, Eaton and Old Republic assert that the amount of the fees is unreasonable. Section 48-125(2)(a) provides for a "reasonable attorney's fee" when the employer fails to timely pay compensation or medical payments.[61]

[25] The determination of an award of attorney fees pursuant to § 48-125 must be calculated on a case-by-case basis.[62] The determination of the amount of attorney fees is necessarily a question of fact that requires a factual determination on several factors, including the value of legal services rendered

---

[60] *Rodriquez v. Prime Meat Processors*, 228 Neb. 55, 421 N.W.2d 32 (1988).

[61] See, *VanKirk v. Central Community College*, 285 Neb. 231, 826 N.W.2d 277 (2013); *Bituminous Casualty Corp. v. Deyle, supra* note 31.

[62] *Simmons v. Precast Haulers*, 288 Neb. 480, 849 N.W.2d 117 (2014).

by an attorney by considering the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.[63]

In arguing that the amount of $7,500 was unreasonable, Eaton focuses on the small award of $1,877.99 in contested temporary total disability benefits and $939 in penalty benefits. Eaton argues that Bower's attorney should not be compensated for that portion of the work attributable to Bower's unsuccessful claims for reimbursement of medical expenses, future medical expenses, loss of earning capacity, and wrongful termination.

We have said that while particular attention should be given to the amount of legal work performed in relation to the unpaid compensation and medical bills, the award is not necessarily limited to legal work performed in recovering a specific, unpaid medical bill or delinquent compensation.[64] Like other questions of fact, the compensation court's determination of reasonable attorney fees pursuant to § 48-125 will not be disturbed on appeal unless it is clearly wrong in light of the evidence.[65] The court's award of $7,500 was not clearly wrong.

## CONCLUSION

For the foregoing reasons, we affirm the court's award.

Affirmed.

---

[63] *Id.*

[64] *Simmons v. Precast Haulers, supra* note 62. See, also, *Harmon v. Irby Constr. Co.*, 258 Neb. 420, 604 N.W.2d 813 (1999) (Gerrard, J., concurring; McCormack, J., joins).

[65] *Simmons v. Precast Haulers, supra* note 62; *Harmon v. Irby Constr. Co., supra* note 64.