Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:10 PM CST

Charles Anderson, appellee, v. EMCOR Group, Inc.,
appellant, and State of Nebraska, Workers'
Compensation Trust Fund, appellee.

___ N.W.2d ___

Filed November 3, 2017.    No. S-17-040.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or
   award of the Workers' Compensation Court may be modified, reversed,
   or set aside only upon the grounds that (1) the compensation court acted
   without or in excess of its powers; (2) the judgment, order, or award was
   procured by fraud; (3) there is not sufficient competent evidence in the
   record to warrant the making of the order, judgment, or award; or (4)
   the findings of fact by the compensation court do not support the order
   or award.
2. ____: ____. On appellate review, the factual findings made by the trial
   judge of the Workers' Compensation Court have the effect of a jury ver-
   dict and will not be disturbed unless clearly wrong.
3. **Workers' Compensation: Statutes: Appeal and Error.** The meaning
   of a statute is a question of law, and an appellate court is obligated in
   workers' compensation cases to make its own determinations as to ques-
   tions of law.
4. **Workers' Compensation.** Whether an injured worker is entitled to
   vocational rehabilitation is ordinarily a question of fact to be determined
   by the Workers' Compensation Court.
5. **Workers' Compensation: Appeal and Error.** To determine whether
   findings of fact made by the compensation court support an order
   granting or denying vocational rehabilitation benefits, an appellate
   court must consider the findings of fact in light of the statute autho-
   rizing vocational rehabilitation benefits, Neb. Rev. Stat. § 48-162.01
   (Reissue 2010).
6. **Workers' Compensation: Intent.** A primary purpose of the Nebraska
   Workers' Compensation Act is restoration of an injured employee to
   gainful employment.

7. **Workers' Compensation.** When an injured employee is unable to perform suitable work for which he or she has previous training or experience, the employee is entitled to vocational rehabilitation services as may be reasonably necessary to restore him or her to suitable employment.

8. **Workers' Compensation: Words and Phrases.** Suitable employment is employment which is compatible with the employee's preinjury occupation, age, education, and aptitude.

9. **Workers' Compensation.** The Nebraska Workers' Compensation Act is construed liberally to carry out its spirit and beneficent purposes.

Appeal from the Workers' Compensation Court: LAUREEN K. VAN NORMAN, Judge. Affirmed.

Dru M. Moses and Patrick J. Sodoro, of Law Office of Patrick J. Sodoro, L.L.C., for appellant.

Dennis P. Crawford, of Crawford Law Offices, P.C., L.L.O., for appellee Charles Anderson.

Douglas J. Peterson, Attorney General, and Lorra T. O'Banion for appellee State of Nebraska, Workers' Compensation Trust Fund.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

CASSEL, J.

## INTRODUCTION

The Workers' Compensation Court awarded an injured employee unspecified vocational rehabilitation. A counselor recommended formal training, but the court's rehabilitation specialist "denied" the plan. The employer petitioned to eliminate the requirement, and the employee moved for plan approval. The court granted approval and denied elimination. The employer appeals. Because competent evidence in the record supported the court's factual findings in light of

the statutory goal to return an injured employee to "suitable employment,"[1] we affirm the compensation court's order.

## BACKGROUND

### ORIGINAL AWARD

The circumstances leading to the initial award of unspecified vocational rehabilitation services were largely undisputed. Charles Anderson sought workers' compensation benefits due to an injury to his upper right extremity. He sustained the injury in the course of his employment as a millwright with EMCOR Group, Inc. (EMCOR). At that time, Anderson earned an hourly wage of $26.50 and an average weekly wage of $1,060. In the initial award, the compensation court expressly stated that it was making no determination as to entitlement to vocational rehabilitation services. After Anderson reached maximum medical improvement, the court entered a further award determining that Anderson was entitled to a vocational rehabilitation evaluation.

### VOCATIONAL REHABILITATION
### COUNSELOR OPINIONS

If an employee claims entitlement to vocational rehabilitation services, the employee and the employer or the employer's insurer shall attempt to agree on the choice of a vocational rehabilitation counselor.[2] The parties agreed upon Lisa Porter, who prepared a "Vocational Rehabilitation Plan Justification for Formal Training Proposal" for Anderson.

Section 48-162.01(3) sets forth five priorities, in order from lower to higher priority, to be used in developing and evaluating a vocational rehabilitation plan. No higher priority may be used unless all lower priorities are unlikely to result in suitable employment.[3] The three lowest priorities involve employment

---

[1] See Neb. Rev. Stat. § 48-162.01(3) (Reissue 2010).

[2] See *id.*

[3] See *id.*

with the same employer.[4] But Porter noted that Anderson could not return to work with EMCOR, because EMCOR had no suitable work available. The next higher priority would be a job with a new employer.[5] But Porter's Internet job searches uncovered jobs paying $9 to $11 per hour. She also called various employers and discovered that there were no current openings in small automotive and engine repair businesses and that all permanent worker positions were filled in horticultural businesses.

A period of formal training designed to lead to employment in another career field is the highest priority set out in § 48-162.01(3)(e). Porter decided that a training program in Anderson's region was the only viable option. She stated: "Anderson did not require any vocational assessment in the form of an interest test, since he already knew what he wanted to do. His interest was developed and he had the skill to grow vegetables as evidenced by having grown county-fair award winning vegetables in the past." She felt that a horticultural or agricultural program would be ideal due to "amazing opportunities available . . . in seed production, tree farms, nurseries, garden centers[,] and hybrid seed producers." Porter further stated: "Anderson will not be able to earn a comparable wage to the $26.50 that he was earning pre-injury initially. However, he is interested in working with an employer once his education is complete for several years before perhaps one day becoming self-employed in hydroponics."

Porter ultimately prepared a plan of study for Anderson. According to the plan, Anderson would obtain a 2-year associate's degree of applied science in agriculture business and management with a focus in horticulture at Southeast Community College in Beatrice, Nebraska. After completion of the plan, Porter projected that Anderson's hourly wage would be $13.20.

---

[4] See § 48-162.01(3)(a) through (c).

[5] See § 48-162.01(3)(d).

A vocational rehabilitation plan must be evaluated by a vocational rehabilitation specialist of the compensation court and approved by such or a judge of the compensation court before it is implemented.[6] There is a rebuttable presumption that any plan approved by the specialist is an appropriate form of vocational rehabilitation.[7] But here, the specialist "denied" the proposed plan. The specialist noted that labor market information from the community college's placement services director did not substantiate the necessity for the proposed formal training or the appropriateness of the specific job goals. Nor did the labor market information in Porter's plan justification support the need for the proposed formal training. The specialist observed that Porter's Internet job search showed six job openings—none of which required formal training—with one opening reporting wages of $9 per hour and another reporting wages of $12 to $14 per hour. The specialist concluded that the plan for formal training was not reasonable or necessary, noting that one of the specific goals of the plan was employment as a vegetable farmer or gardener and that Anderson was currently performing those job functions.

Porter responded to the specialist's denial. She stated that the job goals selected for Anderson were as a supervisor or manager; they were not as a seasonal, minimum-wage earning worker. The job titles Porter focused on required knowledge and education that typically involved training in vocational schools, on-the-job training, and up to an associate's degree. According to an Internet resource, first line supervisors of farming, fishing, and forestry workers in Nebraska earned a median annual wage of $49,100 in 2015.

## MODIFICATION SOUGHT

EMCOR filed a petition to modify the award. It requested a modification of the award of vocational rehabilitation benefits

---

[6] See § 48-162.01(3).

[7] See *id.*

and services, alleging that Anderson's "condition and circumstances no longer support an award of such services." EMCOR asserted that any formal retraining or other vocational rehabilitation services were unnecessary because (1) Anderson was currently engaged in gardening and selling the yield of his efforts and (2) Anderson acknowledged "his inability to earn a similar or increased wage performing the work for which he seeks vocational rehabilitating retraining, and consent to earning such a lower wage."

Anderson filed a motion requesting that the compensation court approve the vocational rehabilitation plan prepared by Porter.

The compensation court thereafter held a hearing on EMCOR's petition and Anderson's motion. The parties stipulated that the usual rebuttable presumption of correctness did not attach to Porter's proposed plan because the specialist did not approve of the plan.

## CLAIMANT'S TESTIMONY

Anderson testified regarding his educational background. He earned a diploma through the GED program. In 1998, he obtained a diploma in computer-aided drafting. But Anderson testified that the diploma was no longer "applicable" because he "would have to totally retrain" due to changes in technology.

At the time of the hearing, Anderson lived in Dawson, Nebraska. He testified that there were few job opportunities in his area and that "[e]verything is pretty much physical labor." Anderson expressed his unwillingness to commute to employment located more than 20 or 25 miles away. Dawson is located approximately 1½ hours from Lincoln and from Omaha. The closest town, Humboldt, Nebraska, is 10 miles away and has a population of approximately 1,000 people. Beatrice is 57 miles away.

Anderson had not sought employment over the past year. He earned money by selling vegetables raised in his half-acre garden, resulting in earnings of approximately $150 a week

over a 5-month period. Anderson wished to build a greenhouse so that he could sell produce year round, but materials for the greenhouse would cost approximately $3,000 and Anderson did not have the money to construct one. Anderson also helped his wife create crafts to sell. He testified that he and his wife collectively earn approximately $8,000 a year.

Anderson wanted to have Porter's plan implemented. He testified it would improve his business by providing him with knowledge to expand "with the greenhouse," knowledge about chemicals used, and general knowledge in botany. He felt that the associate's degree would qualify him for jobs involving applying or selling chemicals, in farm management, or as a golf course manager. Anderson's ultimate career employment goal was to be self-employed. But he explained that he needed other employment before he could construct a greenhouse and become self-employed. Anderson agreed that after completing the program, he would earn less than he did at EMCOR.

## COMPENSATION COURT'S DECISION

The compensation court dismissed EMCOR's petition to modify and ordered that Anderson was entitled to participate in the proposed plan. The court concluded that Anderson's current employment of operating his garden was not "suitable employment" and declined to modify the previous award of vocational rehabilitation services. With regard to Porter's plan, the court stated that it was "unable to conclude that the plan will not lead to a suitable job for [Anderson]."

EMCOR filed a timely appeal, and we moved the case to our docket.[8]

## ASSIGNMENT OF ERROR

EMCOR assigns that the compensation court erred as a matter of law when it determined that the proposed vocational rehabilitation plan would result in suitable employment.

---

[8] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

## STANDARD OF REVIEW

[1] A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[9]

[2,3] The parties disagree as to whether the issue on appeal presents a question of fact or a question of law. On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[10] But the meaning of a statute is a question of law, and an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.[11]

[4,5] Whether an injured worker is entitled to vocational rehabilitation is ordinarily a question of fact to be determined by the compensation court.[12] To determine whether findings of fact made by the compensation court support an order granting or denying vocational rehabilitation benefits, an appellate court must consider the findings of fact in light of the statute authorizing vocational rehabilitation benefits, § 48-162.01.[13]

## ANALYSIS

[6,7] A primary purpose of the Nebraska Workers' Compensation Act is restoration of an injured employee to

---

[9] Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016).

[10] *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015).

[11] *Interiano-Lopez v. Tyson Fresh Meats*, 294 Neb. 586, 883 N.W.2d 676 (2016).

[12] *Stacy v. Great Lakes Agri Mktg.*, 276 Neb. 236, 753 N.W.2d 785 (2008).

[13] *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991).

gainful employment.[14] When an injured employee is unable to perform suitable work for which he or she has previous training or experience, the employee is entitled to vocational rehabilitation services "as may be reasonably necessary to restore him or her to suitable employment."[15] This appeal centers on whether a proposed plan of vocational rehabilitation would restore an employee to "suitable employment."

[8] Over 25 years ago, this court recognized that we had never defined the terms "restore," "suitable employment," and "gainful employment" as used in § 48-162.01.[16] We found instructive definitions from other jurisdictions and quoted with approval the Alabama Supreme Court's interpretation of the terms:

> "'Restore' means to put back. The ability to be gainfully employed must be put back or restored through vocational rehabilitation. Gainful employment means employment similar in remuneration to that earned prior to the injury. Implicit in this is that the gainful employment sought to be restored must be 'suitable.' By 'suitable' we mean employment which is compatible with the employee's pre-injury occupation, age, education, and aptitude. . . ."[17]

We now explicitly adopt those definitions. Thus, "suitable employment" is "employment which is compatible with the employee's pre-injury occupation, age, education, and aptitude."

Although the compensation court's factual findings were not extensive, we cannot say that those findings were clearly

---

[14] § 48-162.01(1).

[15] See § 48-162.01(3). See, also, *Becerra v. United Parcel Service*, 284 Neb. 414, 822 N.W.2d 327 (2012).

[16] See *Yager v. Bellco Midwest, supra* note 13.

[17] *Id*. at 895-96, 464 N.W.2d at 340, quoting *Ex Parte Beaver Valley Corp.*, 477 So. 2d 408 (Ala. 1985).

wrong. The court found: Anderson "acknowledges he would eventually like to earn sufficient income gardening to be able to support himself and his family. However, he recognizes the need for employment to supplement his income. In order to attain employment in a field related to his horticultural interests, he will require additional education." The court determined that vocational rehabilitation services were necessary because income of less than $8,000 per year was not suitable employment. In approving the plan proposed by Porter, the court stated: "While there are numerous impediments to [Anderson's] potential successful completion of the plan, the Court is unable to conclude that the plan will not lead to a suitable job for [Anderson]." And the court also recognized that Anderson's "job opportunities are limited by his choice to live in Dawson, . . . a small, rural area." The court's findings are supported by the record and, thus, are not clearly wrong.

Opposition to the plan focused on Anderson's goal to be self-employed and disregarded his need for other employment. Although Anderson ultimately wished to become self-employed growing and selling produce—work he was already performing—he testified that he would need to obtain other employment before he could do so successfully. And Porter's plan was designed to train Anderson for full-time work as a supervisor or manager. She pointed out that the median annual wage in 2015 for first line supervisors of farming, fishing, and forestry workers was $49,100. Thus, the plan was geared toward putting Anderson back to employment paying wages similar to those earned prior to the injury and in a field that would be compatible with his age, education, and aptitude.

[9] In considering the compensation court's factual findings, we are mindful that the Nebraska Workers' Compensation Act is construed liberally to carry out its spirit and beneficent

purposes.[18] Because the plan was reasonably necessary to restore Anderson to suitable employment, the court did not err in ordering that Anderson was entitled to participate in it.

## CONCLUSION

Because the findings of the compensation court are supported by competent evidence in the record and the plan would comport with the statutory goal to return an injured employee to suitable employment, we affirm the compensation court's order.

AFFIRMED.

---

[18] *Tapia-Reyes v. Excel Corp.*, 281 Neb. 15, 793 N.W.2d 319 (2011).