IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


BOVILL V. QUALITY PORK INTERNATIONAL


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


RANDALL BOVILL, APPELLANT,

V.

QUALITY PORK INTERNATIONAL, INC., AND ZURICH
AMERICAN INSURANCE COMPANY, APPELLEES.


Filed August 29, 2023.    No. A-23-002.


Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Affirmed.

James R. Walz for appellant.

Joseph W. Grant and Kaitlyn J. Glaessmann, of Prentiss Grant, L.L.C., for appellees.


PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

An employee sought workers' compensation benefits for an injury to his neck that he claimed was sustained during a surgical procedure performed to repair a work-related shoulder injury and exacerbated by a fall in the company parking lot. Based upon the employee's medical records and conflicting expert testimony, the Workers' Compensation Court determined the employee failed to prove that he suffered a neck injury during the surgical procedure but that the shoulder injury was compensable. The employee appeals the compensation court's decision denying benefits for his neck injury and the employer cross-appeals the court's award of vocational rehabilitation services for the shoulder injury. We affirm.

## II. BACKGROUND

Randall Bovill sued Quality Pork International and Zurich American Insurance Company (collectively QPI) to recover medical cost and indemnity payments for injuries arising out of the course and scope of his employment with QPI. The parties agree that Bovill suffered a shoulder injury during his employment on November 11, 2019, however, Bovill also claimed that due to his positioning during surgery to repair his shoulder, he sustained a neck injury which is likewise compensable. He further asserted in his amended complaint that he suffered a subsequent fall on ice on his way in to work which permanently exacerbated his neck injury. The issue before the compensation court was causation of the neck injury.

### 1. JANUARY 2019 INJURY

On January 4, 2019, Bovill was in a car accident. Two days later, he sought medical treatment and was diagnosed with whiplash and cervical strain. An x-ray of his cervical spine revealed "mild to moderate intravertebral disc space height loss throughout the cervical spine. This is worse at C5-6 and C6-7."

On January 8, 2019, Bovill sought additional treatment at a medical clinic and reported that he was still experiencing neck pain that prevented him from working. The report notes that Bovill communicated tenderness along the "occipital and cervical spinal paraspinal muscles." Bovill was told to continue heating and icing his neck, taking ibuprofen, and exercising his neck.

Bovill returned to the emergency room on April 4, 2019, with complaints of neck pain. He reported recently seeking chiropractic treatment but did not think it helped. After the emergency room visit, Bovill reported back to the medical clinic, where he detailed thoracic back pain and mild palpable tenderness over the cervical spine. Bovill received an injection of Toradol.

At trial, Bovill described the pain he experienced from his car accident as different than the pain he experienced after his shoulder surgery. He testified at trial that after seeing the chiropractor, his neck pain resolved.

### 2. NOVEMBER 9, 2019, SHOULDER INJURY

In October 2019, Bovill was hired by QPI. On November 9, Bovill was draining water from a cart that tipped over. As Bovill lifted the cart, he felt a pop in his shoulder. The injury was ultimately diagnosed as a right rotator cuff tear.

After seeking medical treatment at a local hospital, Bovill followed up with his primary care physician. Bovill was originally prescribed physical therapy (PT), which he participated in until December 2019. A December MRI revealed a full thickness rotator cuff tear. Because he was not making progress with PT, Bovill was referred to an orthopedic surgeon, Dr. Jack McCarthy. McCarthy recommended surgery to repair his rotator cuff.

Bovill began light-duty work after his injury and continued light-duty work until his shoulder surgery. During this time, he continued working on a full-time basis. At work, he labeled, bagged, and sealed products.

On January 2, 2020, Bovill had surgery to repair his rotator cuff. The operative report described that Bovill was placed on anesthesia without difficulty and was then rolled into the left lateral decubitus position. After the surgery, Bovill was taken to a recovery room in stable condition.

### 3. POST-SURGERY AND RECOVERY

#### (a) Bovill Returns to Work

According to McCarthy's post-operative reports, Bovill had a follow-up appointment 10 days after his surgery, at which time he denied any post-operative problems. It was noted that he had mild swelling and tightness in his shoulder. McCarthy released Bovill to return to work on January 20, 2020, with the restrictions that Bovill did not do any lifting over 1 pound with his right arm, no overhead work, and kept his sling on. Bovill was given modified-duty work that was consistent with his medical restrictions.

Bovill testified that on January 27, 2020, he slipped on ice in the parking lot while he was walking into work and recalled that he was able to see McCarthy the same day as the fall. However, McCarthy's office notes of January 28 indicate that Bovill had slipped "the day before yesterday." He reported feeling acute and severe pain over his right shoulder but did not experience a popping event or subluxation. He also told McCarthy that he missed one day of work that week and had left early on January 28, because the pain was too significant. McCarthy did not think Bovill sustained a significant injury to his shoulder and that the "flare" would settle down over time.

Despite Bovill's contention that the fall occurred in the company parking lot, an email from his human resource director, Laura Nelson, documents that he told her he had slipped on ice at home on Sunday, January 26, 2020. Nelson confirmed this in her trial testimony. QPI's records show Bovill missed work on Monday, January 27, and Tuesday, January 28, because he fell on the ice.

#### (b) Bovill Starts PT

Bovill started PT again on February 28, 2020. On March 6, which was his fourth PT visit, Bovill's PT notes indicate he reported a sharp pain from his neck down to his shoulder that comes and goes. He stated the pain began 2 to 3 weeks prior. His physical therapist thought it was a muscle spasm.

On March 9, 2020, Bovill reported improvements in both his shoulder and neck pain. Bovill continued to progress in PT, as he made advancements at each appointment. By March 18, Bovill was not reporting any major pain or discomfort. He also reported that he had his "best night yet last night regarding pain levels."

Bovill returned to PT on May 7, 2020, for an unplanned session, because his shoulder "froze up" at work while he was performing his job duties. Bovill said his shoulder "suddenly had pain and he couldn't move it." PT notes indicate that Bovill experienced increased pain from scapula palpations. By May 22, Bovill was reportedly progressing through therapy again and able to decrease his pain. By June 1, Bovill reported being able to perform functional daily activities with little difficulty.

#### (c) Bovill Voluntarily Resigns

Bovill's supervisor, Amy Ruppart, testified that Bovill was able to complete his work while he was on light and modified duty. However, on June 16 and 17, 2020, Bovill "no called-no showed" to work. Ruppart explained that if an employee "no called-no showed" two times in a

calendar year, it was considered a voluntary resignation. Consequently, Bovill turned in his equipment and did not return to work at QPI.

### 4. Bovill's Neck Issues Intensify

In September 2020, Bovill was still experiencing pain in his neck, so McCarthy referred him to a neurosurgeon, Dr. Timothy Burd. McCarthy also recommended that Bovill get an MRI of his neck. However, the MRI was not completed until March 2021, because QPI would not authorize it. Bovill also completed a Functional Capacity Evaluation (FCE) on September 14, 2020. The results indicated that Bovill was able to work at the light-medium physical demand level.

After Bovill stopped working at QPI, he applied for unemployment benefits in September or October 2020. In his application, he represented that he was physically capable of working at that time. But after his job search failed to produce employment, he filed for social security disability benefits. In his application for social security disability benefits, Bovill described himself as unable to work, consistent with the Social Security Administration doctor's findings. Bovill clarified that although he testified in his deposition of July 2021 that he could work, he would still be in pain and was willing to work through the pain to provide for his family.

Burd examined Bovill in October 2021. He recommended a three-level fusion from C4 to C7.

### 5. Compensation Court Trial

#### (a) Bovill's Case-in-Chief

Bovill testified that this was his fourth rotator cuff surgery, and the third on his right shoulder. Bovill claimed that he began feeling the pain in his neck shortly after the surgery, and he told McCarthy about the neck pain during his second visit and every visit after.

Bovill explained that his neck pain is so severe that it prevents him from standing up straight and causes him to lean forward. He can only do things at home for a short period of time, and then he must sit down. If he lays down, he cannot roll over without feeling neck pain. The pain prevents him from falling asleep.

#### (b) QPI Employee Testimony

Nelson testified that it was QPI's policy to accommodate any restriction from a doctor to ensure that an employee can return to work. She explained that QPI reviews worker restrictions with the worker's supervisor, and together, they come up with a plan that meets those restrictions. Although Bovill did not complete his FCE until after he stopped working at QPI, Nelson testified that there would have been positions at QPI that Bovill could have done if he had continued working there. Specifically, he could have worked in packaging (putting labels on bags, filling bags of product, or sealing bags), or been placed in a job moving pieces of chicken around on a conveyer belt. Either position would have met his restrictions.

Ruppart also testified that QPI was willing to maintain Bovill's employment if he had not voluntarily resigned. After reviewing the FCE, Ruppart echoed Nelson's statement that there were jobs that Bovill could have done that would have met his restrictions while allowing him to maintain his employment at QPI.

*(i) Burd and Horacek*

Burd submitted three reports addressing Bovill's condition. On October 12, 2021, Burd submitted a comprehensive record review evaluation and offer to treat. He discussed the severity of Bovill's condition, noting that he can barely turn his neck to the right. Bovill's MRI showed spondylolisthesis at C4-5 and severe degenerative changes from C5-6 and C6-7.

In this record evaluation, Burd also answered questions submitted by Bovill's counsel. Burd stated his diagnosis was advanced degenerative disc disease with spondylolisthesis at C4-7. He also answered "Yes" when asked if the medical records and Bovill's sworn testimony persuaded him that Bovill's pain from his car accident had resolved prior to Bovill working at QPI. When asked if it is more likely than not that Bovill's pain is causally related to his November 2019 workplace injury and treatments thereafter, Burd responded that he "believe[d] there is an indirect correlation to this workplace injury." He concluded by stating, "I believe [Bovill's] neck pain is indirectly related to the work-related injury by way of the fact that the treatment for his work-related injury subsequently may have led to his neck pain that has persisted."

On November 11, 2021, Burd answered another set of questions submitted by counsel. He was presented with a series of questions and asked to give his opinion whether, within a reasonable degree of medical certainty, the statement is more probable than not. Burd checked the "Yes" box to the following:

> There are numerous unavoidable consequences of surgery including the manipulation of [Bovill's] cervical spine from surgical positioning or even the wearing of the arm sling after surgery that more likely than not aggravated [Bovill's] pre-existing cervical condition causing him to have the reported post-surgical symptoms.
>
> Whether it is directly or indirectly the result of surgery, [Bovill's] aggravation of his pre-existing cervical condition was caused by the November 9, 2019 work place injury.

On May 2, 2022, Burd responded to a third set of questions submitted by counsel. In his responses, Burd explained that surgery was necessary due to Bovill's degenerative spondylolistheses and advanced degenerative changes. He opined that Bovill had exhausted all conservative nonoperative measures and surgery would stabilize and remove any degenerative changes to Bovill's neck at C4-7.

Dr. Anke Horacek, an emergency room physician, provided a report and deposition testimony on the lateral decubitus positioning and explained how this positioning led to Bovill's neck pain. She reviewed Bovill's medical records but did not personally examine him.

Horacek concluded that Bovill's positioning during surgery is more likely than not the cause of his current neck injury. She relied, in part, on two medical journal articles that provided criterion for determining whether positioning during surgery causes neck injury. With this criterion, Horacek discussed that there was a plausible link between the positioning and the injury, a temporal relationship, and no alternative explanation that was more probable to cause his injury than the surgery positioning. According to her report, she also relied on medical studies, Bovill's medical reports, and her conversation with Bovill about the injury in formulating her opinion.

### (ii) McCarthy and Long

McCarthy authored two reports. In October 2020, he opined that Bovill was at maximum medical improvement and had a 20 percent permanent partial impairment to the right upper extremity. Due to the results of Bovill's FCE and his "significant restrictions," McCarthy opined that Bovill may be precluded from returning to previous heavy-work activities.

In the second report authored in September 2021, McCarthy addressed Bovill's neck issues. He reviewed his operative and post-operative reports and did not see any history of cervical problems during the period of time that he treated Bovill. McCarthy identified one note from May 2020, in which he noticed some cervical spine tenderness, but he attributed it to Bovill being in rehabilitation for his shoulder surgery. He stated he did not see any real references to a significant pathology after reviewing his records. McCarthy concluded that "I would not feel his cervical problem, if one is noted, is related to our surgery which had been done eight months before."

QPI also requested an opinion from Dr. Douglas Long, a neurosurgeon. He reviewed Bovill's records and noted that McCarthy did not feel the neck problem was related to the rotator cuff surgery. He stated he was "in full agreement with that statement." Long believed that Bovill's neck complaints were a routine flare-up of his underlying cervical spondylosis, and not an aggravation of his shoulder injury or treatment.

### (d) Compensation Court's Order

The compensation court held that Bovill failed to prove that his neck injury was caused by his positioning during his rotator cuff surgery. It found that Bovill had a 20 percent impairment and awarded temporary and permanent benefits. The court found that the first mention of neck pain was contained in the PT notes for March 6, 2020, and that according to Bovill, it had been going on for 2 to 3 weeks. It concluded based on that report, that the earliest date for neck pain would have been February 13, which was after the slip and fall that occurred on or about January 26.

The compensation court explained its reasoning for determining that Bovil failed to prove he suffered a neck injury during the rotator cuff surgery:

> The basis for this is that there are few, if any, complaints about neck pain prior to May. Even when he complained of neck pain to the physical therapist by April 18, 2020, he had no major pain or discomfort and had "the best night yet" regarding pain levels. There is also the fact that [Bovill] had a preexisting condition and the slip and fall, which required a visit to Dr. McCarthy. There was no complaint of neck pain to Dr. McCarthy after the slip and fall. If there had been neck pain after the surgery and before the January 28, 2020, visit to Dr. McCarthy, there would have been a complaint. There is also no evidence of any mistakes in positioning [Bovill] at the time of the surgery. Even Dr. Burd states, in his response to one of the questions posed by [Bovill's] counsel, that the injury to the neck and the treatment for the injury, *may* have led to his neck pain that has persisted. "May" is not enough.

In addition to ordering QPI to pay medical expenses incurred for Bovill's shoulder injury (but not his neck injury), the compensation court determined that Bovill was entitled to vocational rehabilitation services if he desires them. Bovill appeals and QPI cross-appeals.

### III. ASSIGNMENTS OF ERROR

We restate and consolidate Bovill's assigned errors as follows: The compensation court erred by (1) failing to find that Bovill established a prima facie case and not shifting the burden to QPI to disprove the causal relationship; (2) disregarding Burd's and Horacek's expert testimony and relying on McCarthy's and Long's expert testimony; and (3) violating rule 11(a) of the Workers' Comp. Ct. R. of Procedure by not providing a clear, concise, and reasoned decision containing fact and conclusions of law based upon the whole record.

QPI has cross-appealed, assigning as error the award of vocational rehabilitation services.

### IV. ANALYSIS

#### 1. SUFFICIENCY OF EVIDENCE

#### (a) Standard of Review

On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Aboytes-Mosqueda v. LFA Inc.*, 306 Neb. 277, 944 N.W.2d 765 (2020). In testing the sufficiency of evidence to support the findings of fact in a compensation case, the appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id*.

#### (b) Breadth of Appellate Review

As a preliminary issue, Bovill contends that we cannot consider McCarthy's and Long's expert opinions because the compensation court did not rely on them. He relies on Workers' Comp. Ct. R. of Proc. 11, which provides that "[d]ecisions of the court shall provide the basis for a meaningful appellate review. The judge shall specify the evidence upon which the judge relies." Bovill explains

> by not discussing Dr. McCarthy and Dr. Long's Rule 10 reports in the trial court findings and conclusions, the Appellate review must find the trial judge did not rely on the defendants' experts. The trial judge gave as much attention and discussion to Dr. McCarthy and Dr. Long's Rule 10 reports as it did Dr. Horacek which it is apparent, he did not rely on her opinions.

Brief for appellant at 29.

We reject Bovill's argument. As an initial matter, the compensation court award is not divided into sections separating "facts" from "findings and conclusions." Regardless, it is apparent from the court's selection of relevant language from McCarthy's and Long's reports what portions it relied upon in reaching its conclusion, regardless of the "section" of the award in which the excerpts are stated. The court iterated McCarthy's statement that he had reviewed Bovill's records and Bovill did not have a history of cervical problems during the extended period of time that McCarthy followed him. It also quoted Long's response to Bovill's counsel, and it noted that Long agreed with McCarthy that Bovill's neck injury is not related to his surgery. Bovill's contention

that McCarthy's and Long's expert opinions are excluded from appellate review because the compensation court did not rely on them is without merit.

(c) Bovill Failed to Establish Causation

Bovill contends that he presented sufficient expert opinion testimony to prove his neck injury arose from his shoulder surgery, so the compensation court should have shifted the burden to QPI to disprove that causal connection. We disagree that Bovill met his burden.

To recover under the Nebraska Workers' Compensation Act, a claimant must prove by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment caused an injury which resulted in disability compensable under the act. *Potter v. McCulla*, 288 Neb. 741, 851 N.W.2d 94 (2014). If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Id*.

Bovill argues that he presented sufficient causation opinions; thus, the compensation court erred by finding "the insufficient opinions of Dr. McCarthy and Dr. Long met the defendant's burden of proving the nonexistence of the presumed fact was more probable than the existence that the surgery caused [Bovill's] new and distinctly different radicular pain." Brief for appellant at 29. Bovill's argument is based on an erroneous application of presumptions. He contends that pursuant to Neb. Rev. Stat. § 27-401 (Reissue 2016) "a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Brief for appellant at 28. While that is a correct statement of the law, no presumption exists here. Bovill argues that the presumption afforded to court-appointed vocational experts should apply to his experts; however, that presumption is statutorily created by Neb. Rev. Stat. § 48-162.01 (Reissue 2016), and no such presumption exists for causation opinions of medical experts.

The issue of causation of an injury or disability is one for the trier of fact to determine. *Potter v. McCulla, supra*. When the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Damme v. Pike Enters*., 289 Neb. 620, 856 N.W.2d 422 (2014).

Bovill failed to establish a causal connection between his shoulder surgery and his neck pain. The nature of Bovill's injury was not plainly apparent; therefore, it was incumbent upon Bovill to produce expert testimony to prove causation. Between the two parties, the compensation court was presented with four expert opinions, and it was in the optimal position to determine each expert's credibility. See *Hynes v. Good Samaritan Hosp*., 291 Neb. 757, 869 N.W.2d 78 (2015). The compensation court found no evidence to support Bovill's claim that his position during his rotator cuff surgery caused his neck injury. It found no evidence of any mistakes in positioning Bovill at the time of his surgery and found Burd's opinion that the surgery "may" have caused the neck pain insufficient. It relied upon the absence of neck pain complaints following the surgery and Bovill's own statement on April [sic] 18, 2020, that he had had "the best night yet" regarding pain levels. It found McCarthy's patient notes and operative reports persuasive, as it relied on both in its conclusion.

The evidence relied upon by the compensation court as stated in its award is sufficient to support its factual finding on causation. Factual findings made by the trial judge have the effect of

a jury verdict and will not be disturbed unless clearly wrong. *Money v. Tyrrell Flowers*, 275 Neb. 602, 748 N.W.2d 49 (2008). Because Bovill failed to establish a prima facie case of causation, the burden of proof did not shift to QPI to rebut his evidence. See *Escobar v. JBS USA*, 25 Neb. App. 527, 909 N.W.2d 373 (2018). Bovill's argument that the court erred in failing to shift the burden of proof to QPI fails.

### 2. EXPERT TESTIMONY

#### (a) Standard of Review

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Martinez v. CMR Constr. & Roofing of Texas*, 302 Neb. 618, 924 N.W.2d 326 (2019). Findings of fact made by the compensation court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Id*.

#### (b) General Principles

As the trier of fact, the compensation court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Bower v. Eaton Corp.*, 301 Neb. 311, 918 N.W.2d 249 (2018). It is the compensation court's decision to determine which expert witnesses are credible, if any. *Ludwick v. TriWest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004).

An expert's opinion must be viewed in the larger context of the expert's entire opinion. *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999). Medical testimony does not need to be couched in the magic words of reasonable medical certainty or reasonable probability. *Id*. The plaintiff cannot prevail if the medical testimony only gives rise to conflicting inferences of equal degree of probability, so the choice between them becomes a matter of conjecture. *Welke v. City of Ainsworth*, 179 Neb. 496, 138 N.W.2d 808 (1965).

#### (c) Burd

Burd issued three reports. In his first report, he concluded that "the treatment for [Bovill's] work-related injury subsequently *may* have led to this neck pain that has persisted." (Emphasis supplied.) In his subsequent reports, Burd opined to a reasonable degree of medical certainty that there are numerous unavoidable consequences of surgery "that more likely than not aggravated [Bovill's] pre-existing cervical condition causing him to have the reported post-surgical symptoms" and that the proposed cervical fusion was reasonable and necessary as a result of the November 9, 2019, workplace injury. The compensation court quoted only Burd's first report, emphasizing that the word "may" is insufficient to prove causation.

Bovill assigns the compensation court erred by disregarding Burd's second and third reports. He argues that those reports evince Burd's evolving opinion which ultimately "met the evidentiary burden of preponderance of the evidence." Brief for appellant at 21. Bovill contends that the second report reflects that Burd reviewed more medical records and reached his conclusion with more medical certainty.

While it is accurate that the award cites to only Burd's first report, the compensation court quoted Burd's opinion that it is "more likely than not the pain [Bovill] complains of in his neck is causally related to his November 9, 2019 workplace injury and treatments thereafter." This

statement meets the preponderance of the evidence standard that Bovill asserts is contained in Burd's subsequent reports. Despite this opinion, the compensation court declined to accept Burd's causation opinion, which it was entitled to do. When there is a conflict in testimony of expert witnesses, the trial court is entitled to accept the opinion of one expert over another. *Toombs v. Driver Mgmt. Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995).

Despite the compensation court's omission of Burd's subsequent reports, we cannot find the court was clearly wrong in determining that Bovill failed to prove his neck pain was caused by his positioning during his shoulder surgery. As noted by the compensation court, there are no records immediately following the surgery in which Bovill complained of neck pain. And the compensation court found that "[i]f there had been neck pain after the surgery and before the January 28, 2020, visit to Dr. McCarthy, there would have been a complaint." Our review of the record supports the court's factual findings. Therefore, we find no clear error in the court's decision to reject Burd's opinion on causation.

### (d) Horacek

Bovill contends the compensation court "implicitly disregarded Dr. Horacek's opinions on misstated evidence." Brief for appellant at 27. He argues that the compensation court should have considered Horacek's opinion as sufficient to establish causation instead.

The compensation court discussed Horacek's opinion in its order and acknowledged her conclusion that Bovill's neck pain was a direct result of his rotator cuff surgery. It caveated Horacek's conclusion with the fact that her opinion was primarily based on articles she read, and she "is not a surgeon." Bovill asserts it was error for the compensation court to disregard her qualifications "without a reasoned explanation and upon incorrect and incomplete facts." Brief for appellant at 26. We disagree.

Although Horacek testified in her deposition that she is an emergency room physician and in that capacity is familiar with the decubitus position and the precautions needed to avoid neck injury, she also identified in her report a series of journal articles from which she derived criteria to determine whether "Bovill meets the injury symptom causation requirements for his neck pain." She identified the three criterion and concluded that there was a "plausible link" and a "temporal relationship" between the surgery and the pain. She also concluded that there was not a more likely or probable explanation for his symptoms. Without knowing whether any safety precautions were taken to stabilize Bovill's neck during surgery, she assumes none were taken because "there is no mention of precautions to avoid positioning complications in either Dr. McCarthy's operative note or the anesthesia record."

As evidenced by the compensation court's decision that Bovill failed to prove causation, the court rejected Horacek's opinion. As stated above, the primary basis for doing so is the absence of timely complaints of neck pain. Because the records support this factual finding, the compensation court did not abuse its discretion by not relying on Horacek's opinion.

### (e) McCarthy and Long

Bovill assigns that the compensation court erred by affording McCarthy's and Long's opinions probative value. Specifically, Bovill argues that the compensation court should not have given McCarthy's opinion any weight because he "expressed his opinion in terms of emotion."

Brief for appellant at 23. He contends the language expressed merely a "feeling" which is analogous to an opinion based upon "could" or "suggest" which the Nebraska Supreme Court found insufficient in *Caradori v. Frontier Airlines*, 213 Neb. 513, 329 N.W.2d 865 (1983) and *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991). Brief for appellant at 24. We disagree.

Both *Caradori v. Frontier Airlines, supra*, and *Miner v. Robertson Home Furnishing, supra*, focused on whether the physician's opinion gave conflicting references to equal degrees of probability on causation. In *Miner*, the Supreme Court iterated that the sufficiency of the opinion must be judged in the context of the expert's entire statement and in doing so found the physician's opinion sufficiently stated. Here, McCarthy stated that he had reviewed all of his treatment records for Bovill and saw no history of cervical problems or any real reference to a significant pathology; therefore, McCarthy's opinion that he did not feel Bovill's cervical problem was related to the surgery does not give rise to equal degrees of probability. As in *Miner*, the opinion is not insufficient as a matter of law to establish causation. The weight to be given such testimony is up to the trier of fact. See *Miner v. Robertson Home Furnishing, supra.*

Bovill assigns that the compensation court erred in considering Long's opinion because he only agreed with McCarthy's "feeling." Brief for appellant at 24. He argues, "No court should ever give any credence to an expert opinion couched in terms of 'I feel' . . . when terms of probability are required." *Id*. at 26.

Long agreed with McCarthy's statement that he feels there is no connection between Bovill's neck injury and rotator cuff surgery. He further stated that he "believe[s] [Bovill's] current neck complaints are a routine flare-up of his underlying cervical spondylosis, and not an aggravation of his shoulder injury and/or treatment." Prior to rendering these opinions, he summarized McCarthy's records and referenced Burd's note about Bovill's previous chiropractic adjustment and his subsequent PT treatments. Long noted the absence of any mention of neck pain to McCarthy, except for the May 4, 2020, visit and then again in late September.

Similar to our analysis of McCarthy's opinion, when viewing Long's report in its entirety, we do not view it as giving conflicting references to equal degrees of probability on causation. Rather, he concludes that Bovill's current complaints are caused by Bovill's underlying spondylosis and not an aggravation of his shoulder injury or treatment. It was not error for the compensation court to give weight to this opinion.

### 3. RULE 11(A) VIOLATION

#### (a) Standard of Review

On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Melton v. City of Holdrege*, 309 Neb. 385, 960 N.W.2d 298 (2021).

Under Neb. Rev. Stat. § 48-185 (Cum. Supp. 2020), a judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there was no sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Boring v. Zoetis LLC*, 309 Neb. 270, 959 N.W.2d 795 (2021).

### (b) Factual Findings

Bovill assigns that the compensation court made an incorrect finding of fact. He claims it "erroneously stated that [Bovill] first complained of pain on April 18, 2020 at PT but also stated [Bovill] complained of pain radiating into his upper arm on February 28, 2020 that had been ongoing for two to three weeks." Brief for appellant at 29-30.

Contrary to Bovill's interpretation of the court's award, it did not find that Bovill first complained of pain on April 18, 2020 at PT. It stated, "The first mention about the neck is found in the [PT] notes for March 6, 2020" at which time Bovill complained of a sharp pain radiating from his neck that had been going on for 2 to 3 weeks. Based upon that note, the court deduced "the earliest date for pain would have been February 13, 2020." Thereafter, the court stated, "Even when [Bovill] complained of neck pain to the physical therapist by April 18, 2020, he had no major pain or discomfort and had 'the best night yet' regarding pain levels." We interpret this to mean that Bovill first complained of neck pain at PT on March 6, 2020, which pain could have started no earlier than February 13; however, by April 18, he no longer had major pain.

We acknowledge that the compensation court misstated the date that Bovill reported his "best night yet." The records reveal that comment was made on March 18, 2020, not April 18. However, the specific date is immaterial, as the point the compensation court was making was that the earliest indication of neck pain was February 13, but it resolved shortly thereafter.

### (c) Adequate Reasoning

Bovill also assigns that the compensation court did not provide a reasoned decision containing facts and conclusions of law based upon the whole record in violation of rule 11. He argues that there was not any conflicting medical evidence, and it did not explain which facts support McCarthy's and Long's expert opinions. It also did not indicate it was accepting any medical evidence over other medical evidence.

In *Hale v. Standard Meat Co*., 251 Neb. 37, 554 N.W.2d 424 (1996), the Supreme Court held that a compensation court's order of dismissal failed to comply with rule 11 because the court did not explain how the plaintiff failed to meet his burden. The compensation court had only provided that "the evidence does not preponderate in favor of finding for the plaintiff." *Id*. at 40, 554 N.W.2d at 426. Without advising an appellate court of how the plaintiff failed to meet his or her burden, the appellate court could not engage in a meaningful review. *Id*. Essentially rule 11 requires that an order clearly and unambiguously states whether the plaintiff met his or her burden, and what evidence the trial judge relied on in making such finding. See *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998).

Unlike the court in *Hale v. Standard Meat Co., supra*, the compensation court here provided adequate reasoning to satisfy rule 11. After stating that Bovill failed to prove causation, the court stated "The basis for this is that there are few, if any, complaints about neck pain prior to May." It then went on to set forth the many other reasons that supported its conclusion. Despite Bovill's contention, there was conflicting medical evidence, which the compensation court acknowledged when it discussed each of the expert's opinions and stated the question at hand was whether Bovill's neck injury was an aggravation of a preexisting condition that arose from his positioning during his rotator cuff surgery.

- 12 -

Although the compensation court did not discuss Burd's second or third reports, the compensation court can determine which expert opinions it accepts. See *Toombs v. Driver Mgmt. Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995). As evidenced by the award, the court did not find Burd's or Horacek's opinions persuasive. In compliance with rule 11, the court set forth the evidence upon which it relied, that primarily being the lack of complaints of neck pain in close proximity to the surgery as evidenced by the medical records themselves and McCarthy's report. Bovill's argument that the award does not comply with rule 11 fails.

### 4. VOCATIONAL REHABILITATION

### (a) Standard of Review

Whether an injured worker is entitled to vocational rehabilitation is ordinarily a question of fact to be determined by the compensation court. *Anderson v. EMCOR Group*, 298 Neb. 174, 903 N.W.2d 29 (2017). To determine whether findings of fact made by the compensation court support an order granting or denying vocational rehabilitation benefits, an appellate court must consider the findings of fact in light of the statute authorizing vocational rehabilitation benefits. *Id*. On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Melton v. City of Holdrege*, 309 Neb. 385, 960 N.W.2d 298 (2021).

### (b) Discussion

On cross-appeal, QPI assigns the compensation court erred by awarding Bovill vocational rehabilitation because QPI would have continued his employment had he not voluntarily resigned. Both parties agree that Bovill suffered from a shoulder injury as the result of his employment and the court determined he has a 20 percent impairment. QPI contends that there was insufficient evidence to suggest that Bovill was unable to return to gainful suitable employment.

A primary purpose of the Nebraska Workers' Compensation Act is restoration of an injured employee to gainful employment. *Anderson v. EMCOR Group, supra*. The act should also be construed liberally to carry out its spirit and beneficent purposes. *Id*.

Under § 48-162.01(3) an injured employee is entitled to vocational rehabilitation services when, as a result of the injury, they are unable to perform suitable work for which they have previous training or experience. Determination as to whether an injured employee can perform the work for which that employee was previously trained is a question of fact to be determined by the trial judge, and that determination will not be disturbed by an appellate court unless the judge's finding is clearly erroneous. *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). Suitable work means employment which is compatible with the employee's pre-injury occupation, age, education, and aptitude. *Anderson v. EMCOR Group, supra*.

Although the compensation court's factual findings regarding Bovill's ability to work were not extensive, we cannot say that those findings were clearly wrong. The compensation court found that when Bovill returned to work after his surgery, he could do no lifting over 1 pound with his right arm, and no overhead work. Bovill never returned to his pre-injury employment status, as he transitioned to light-duty following the injury and remained on light-duty until he voluntarily left in June 2020. Bovill testified at trial that he was able to work as long as he stayed "in the box," but he would also work through any pain he had to support his family. Bovill had always been

- 13 -

employed in heavy labor. Even QPI acknowledges that if Bovill remained employed, he would have continued with permanent restrictions, and suggested that his new job would involve putting labels on packages and packing items into bags.

The compensation court found vocational rehabilitation was reasonably necessary, which implies it found that Bovill's light-duty work was not compatible with his pre-injury employment as a heavy laborer. Considering the findings of fact in light of the statute authorizing vocational rehabilitation benefits, we cannot say the compensation court was clearly wrong in authorizing vocational rehabilitation services.

## V. CONCLUSION

The compensation court was not clearly wrong in finding that Bovill failed to meet his burden of proof on causation. It did not abuse its discretion in relying on McCarthy's and Long's expert reports, instead of Horacek's and Burd's opinions. Its order provided a clear, concise, and reasoned decision containing facts and conclusions of law based upon the whole record. And we find no clear error in awarding Bovill vocational rehabilitation services.

AFFIRMED.